THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHESTER RAY, Defendant-Appellant.

Fourth District   No. 4—84—0168

Opinion filed November 20, 1984.—Rehearing denied December 31, 1984.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Chris E. Freese, State's Attorney, of Sullivan (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On February 1, 1984, following a jury trial in the circuit court of Moultrie County, defendant, Chester Ray, was convicted of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)). He was subsequently sentenced to three years' imprisonment and ordered to pay a $1,500 fine. On appeal, defendant contends that (1) he was deprived of his right to counsel; (2) the court erred in permitting the introduction of evidence that he had been arrested on a prior, unrelated charge; (3) the court abused its discretion in denying his motion to continue his sentencing hearing so that he might obtain counsel; and (4) the court erred in imposing a $1,500 fine and failing to give him credit for time served in custody prior to his conviction.

■ Defendant's claim that he was deprived of his right to counsel arises from the manner in which the trial court accepted his waiver of counsel. The defendant maintains that the defect in procedure rendered his waiver involuntary. Supreme Court Rule 401(a) states:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." 87 Ill. 2d R. 401(a).

This court has held that no waiver of counsel can properly be accepted without strict compliance with each of the required admonitions. (*People v. Johnson* (1984), 123 Ill. App. 3d 128, 462 N.E.2d 930; *People v. Derra* (1981), 92 Ill. App. 3d 1106, 416 N.E.2d 688.) In *Johnson*, Justice Trapp explained that the strict requirement provides a procedure which eliminates any doubt that the waiver is made with the full understanding of the defendant. The requirement of strict compliance for waiver of counsel is in contrast to requirements for accepting pleas of guilty pursuant to Supreme Court Rule 402 (87 Ill. 2d R. 402) where, by the express terms of the Rule, only "substantial compliance" is required.

Here, the court accepted a waiver of counsel from defendant at a preliminary hearing on October 4, 1983. At that hearing, the trial court complied with all of the requirements of Rule 401(a) except that concerning the minimum and maximum sentences. On September 29, 1983, the defendant had been before the court and had been admonished by the court that he was charged with a Class 2 felony for which he could be imprisoned for a period of a minimum of three years and a maximum of seven years, with a mandatory supervised release period of two years to be served after completion of the imprisonment. The record indicates that defendant had previously been convicted of several offenses including burglary in the past 10 years and was thus eligible for an extended-term sentence of a maximum of 14 years. Defendant was not advised of this possi-

bility.

We deal separately with the questions of the failure of the court (1) to ever advise defendant of the possibility of an extended-term sentence, and (2) to otherwise advise defendant at the hearing where counsel was waived as to the minimum and maximum sentences that could be imposed.

■ The parties do not dispute that no compliance was made with the requirement for admonishment as to the possibility of an extended-term sentence being imposed. No case touching upon this point has been called to our attention. Obviously, the defendant was not prejudiced by the lack of the admonishment as no extended-term sentence was imposed. Unlike a situation where a defendant is placed on probation and that probation is later revoked, no extended sentence could later be imposed here. We find analogy to the rule in criminal contempt cases where the trial court either fails to obtain a valid jury waiver from a respondent or refuses to honor the respondent's request for a jury trial. Under those circumstances, a respondent's conviction for contempt need not be set aside, but the sanction must be limited to the maximum punishment constitutionally permitted to be imposed without a jury trial. (*County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.) Here, the failure of the court to admonish the defendant as to the possibility of an extended-term sentence would have rendered erroneous any such sentence. As none was imposed, no reversible error occurred.

■ ■ The failure of the court at the proceeding where counsel was waived to otherwise advise defendant of the minimum and maximum sentence that could be imposed stands in a different light. Clearly, if the requirement to give this admonition were not complied with, a new trial would have to be ordered, because defendant was given a sentence. The record does show that during the course of the pretrial proceedings there was strict compliance with the requirement for this admonition. The problem is that five days elapsed between the admonition and the waiver of counsel. Although the best practice is to give the admonition at the time of accepting the waiver, the failure to do so is not necessarily fatal. Each case must be determined on its own peculiar circumstances, with the principal focus upon the length of time between the waiver of counsel and the plea. The five-day lapse here was not inordinate and did not create reversible error.

■ The introduction of evidence that defendant had been arrested for an earlier, unrelated charge occurred when Charles Hess,

a law enforcement officer, identified an arrest card bearing defendant's fingerprints as having been made on January 1, 1980, when defendant was processed at the Moultrie County jail. The fingerprint was then used by a fingerprint expert in presenting testimony that the print on the card was of the same person as a latent print removed from the refrigerator of the house where defendant allegedly committed the instant burglary. Defendant made no objection to the introduction of this evidence and did not raise the issue in the post-trial motion. Accordingly, we may consider the propriety of the introduction of this evidence only if it was plain error. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ Evidence that an accused has previously committed criminal offenses is usually inadmissible and cannot be used to prove a propensity on the part of the accused to commit crime. (*People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113.) In *People v. Lewis* (1964), 30 Ill. 2d 617, 198 N.E.2d 812, the court held that no error occurred from the admission of evidence of three subsequent sales of narcotics by an accused, charged with unlawful sale and possession of narcotics, when the evidence aided in establishing the identity of the accused as the person committing the crimes charged. In *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364, the court found no reversible error where evidence that photographs of the accused, shown to a victim in aid of identification, had come from a police station and the error had not been preserved. On the other hand, in *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72, introduction into evidence of identifying photographs of the accused which showed they were taken when he was held on other charges was held to be error. The court refused to find the error to have been waived, even though it was not preserved in the defendant's motion for a new trial. The issue had been raised in the trial court by objection to the admission of the evidence.

In order to determine whether plain error occurred here, we consider the strength of the State's case. While the evidence of defendant's guilt was not overwhelming, it was strong. As indicated, evidence was admitted that defendant's fingerprint was found in the house where the burglary was alleged to have occurred. The presence of this print was not otherwise explained. Karen Brownlee testified that she and defendant had committed a burglary of a house belonging to Robert Kirkpatrick. He was the owner of the building described in the information. On cross-examination, Brownlee maintained that she had determined that the building she and defendant burglarized was not one owned by Kirkpatrick. She was shown to

have pleaded guilty to burglary of Kirkpatrick's building. She maintained that she was forced into that plea by the prosecutor. However, a transcript of the plea proceedings in that case was introduced into evidence, and the transcript clearly showed that Brownlee's plea was voluntary. Brownlee was later called by defendant and testified that the building she had identified to police officers as the building she and defendant burglarized was not really the building they had burglarized.

■ Here, as in *Lewis*, the evidence which indicated that the accused may have committed another offense was also an aid in establishing a proper element of the State's case. Here, the element was that the latent fingerprint was defendant's. To make this proof, it was necessary to have a print known to be that of the defendant, in order for a comparison to be made. The fingerprint on the arrest card was likely to have been the only one available before defendant's arrest for this crime. However, a fresh print could have been obtained from defendant after his arrest (87 Ill. 2d R. 413(a)(iii)) and then used at trial for comparison. Nevertheless, considering (1) the strength of the proof of defendant's guilt, and (2) the properly probative use made of the fingerprint on the card, we hold that plain error did not occur in the process.

■ At the time of sentencing, defendant requested a continuance so that he could obtain counsel. Although his right to counsel was earlier waived, that waiver lapsed when he subsequently requested counsel. (*People v. Baker* (1982), 92 Ill. 2d 85, 440 N.E.2d 856.) Thus, the question to be decided is not whether defendant had a right to counsel, but whether he had a right to a continuance to obtain counsel. In *People v. Williams* (1982), 92 Ill. 2d 109, 440 N.E.2d 843, the court held that a defendant is not entitled to a continuance to obtain counsel when it appears that the continuance is requested to obtain delay. That case presented a gross situation where the defendant had already been given 19 continuances. We ruled similarly in *People v. Marshall* (1981), 101 Ill. App. 3d 244, 427 N.E.2d 1333, where defendant had been given several continuances and had asked to have previous counsel discharged. In *Ungar v. Sarafite* (1964), 376 U.S. 575, 11 L. Ed. 2d 921, 84 S. Ct. 841, the court found that a trial court did not abuse its discretion in refusing a continuance to obtain counsel when the defendant had five days' notice of the withdrawal of his previous attorney and had done nothing to obtain counsel.

At the close of trial, on February 1, 1984, the court set February 22, 1984, as the date for sentencing. On February 6, 1984,

defendant filed a post-trial motion which was then also set for hearing on February 22, 1984. At the beginning of the February 22 hearing, defendant requested a continuance contending that he had believed that sentencing was to take place February 27, 1984. Defendant then proceeded to argue his post-trial motion *pro se*. During the course of the argument, the prosecutor criticized the defendant's argument and his reference to what he could have done had he had a lawyer. The prosecutor mentioned that the defendant had been offered counsel and had refused it on a number of occasions. Only then did defendant give indication that he wanted to obtain counsel. Defendant asked for a continuance for one week to get counsel. The court denied the request and then denied the post-trial motion. The sentencing hearing was then held.

■■ We conclude that, as the defendant had from February 1, 1984, to February 22, 1984, to obtain counsel for his post-trial motion and sentencing if he had wished counsel, as in *Unger*, he had been most dilatory in failing to do so. Even if he had been reasonable in assuming the hearing to have been set for February 27, 1984, he was dilatory in obtaining counsel if he had not done so by February 22. His decision to obtain counsel was an afterthought when his post-trial motion was not well received. The court could have concluded that the request was a delaying tactic and did not abuse its discretion in denying the request.

■■ We reject defendant's contention that the imposition of a fine of $1,500 against him was a breach of discretion. Evidence showed that he had a motorcycle, a pickup truck, and was in the process of purchasing a mobile home. Moreover, the sum of $2,500 had been posted by him as a 10% bond deposit. Those proceeds were available for fine payment regardless of who may have furnished the money. *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

■■ The State agrees that defendant is entitled to a reduction in the amount of his fine in the sum of $160 as credit for the time he spent in jail prior to posting bond. (Ill. Rev. Stat. 1983, ch. 38, par. 110—14.) Accordingly, the amount of the fine is reduced to the sum of $1,340 and, as reduced, the sentence and the underlying conviction are both affirmed.

Conviction affirmed. Sentence affirmed as reduced.

MILLS, P.J., and TRAPP, J., concur.