# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### People v. Guerrero, 2012 IL 112020

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROLANDO GUERRERO, Appellee. |
| Docket No. | 112020 |
| Filed | February 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Leave to file a successive postconviction petition was properly denied despite claimed reliance on a recent decision where the circuit court's factual finding of lack of cause for not raising the claim earlier was not manifestly erroneous—sentencing challenge based on pleading guilty without advice as to mandatory supervised release. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Amy Bertani-Tomczak, Judge, presiding. |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erica Seyburn, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Kerry J. Bryson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1     The issue presented in this appeal is whether the defendant, Rolando Guerrero, demonstrated cause and prejudice under section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2006)) sufficient to grant him leave to file a successive postconviction petition. That petition claimed that his due process rights were violated because the trial court failed to admonish him regarding his term of mandatory supervised release (MSR) after the parties negotiated a 50-year prison sentence in exchange for his guilty plea to first degree murder, the trial court informed him that it was not bound by this agreement, and he was ultimately sentenced to a 50-year term. The circuit court of Will County denied defendant leave to file his successive postconviction petition. A majority of the appellate court reversed, concluding that, because defendant established cause for his failure to raise the MSR issue at an earlier date and prejudice in that his plea was not knowingly and voluntarily made, his sentence should be reduced to 47 years' imprisonment to be followed by a term of 3 years' MSR. No. 3-07-0856 (unpublished order under Supreme Court Rule 23). We granted the State leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)), and for the reasons that follow, we reverse the judgment of the appellate court and affirm the circuit court's judgment.

¶ 2                                    BACKGROUND

¶ 3     Defendant was charged by criminal complaint with first degree murder, which occurred on or about September 22, 1991. The grand jury of Will County thereafter returned a bill of indictment on October 16, 1991. On December 2, 1991, the parties appeared before the trial court and the State indicated that defendant would be pleading guilty to first degree murder

in exchange for a recommendation of 50 years in the Department of Corrections. Defense counsel concurred with that representation to the court. The trial court then confirmed with the State that this was the extent of the negotiations.

¶ 4    The State presented an agreed factual basis to the trial court, after which the court advised defendant that first degree murder carried a minimum sentence of 20 years and a maximum sentence of 60 years in the Department of Corrections and up to a $10,000 fine. On the record, defendant verbally indicated that he understood these penalties, whereafter the court verified that defendant understood that the court was not bound by the plea agreement. After further admonitions, defendant stated that he was pleading "Guilty" to the charge, which the court accepted. Prior to proceeding to sentencing, the trial court raised the necessity for a presentence investigation (PSI) report with counsel. The attorneys for the State and defense agreed to waive the preparation of a PSI report.

¶ 5    Defense counsel then stated as follows regarding defendant's criminal history:

> "He is approximately sixteen and a half, at this time. He was previously adjudicated delinquent and sentenced to the Department of Corrections as a juvenile. That occurred shortly before this occurred. The mittimus was stayed. So he has a mittimus to juvenile D.O.C. for that offense. The mittimus should reflect that he will be sent to the Illinois Department of Corrections, Juvenile Division."

Thereafter, the court approved the plea negotiations and sentenced defendant to 50 years in the Department of Corrections. The parties agree that the trial court did not advise defendant regarding the statutorily required three years of MSR that would follow the period of imprisonment. Nor did the trial court's signed written judgment, entered on December 4, 1991, order or reference any term of MSR which defendant would have to serve.

¶ 6    Defendant filed a *pro se* motion for postconviction relief on October 27, 1994. The trial court dismissed that petition, and the dismissal was affirmed on appeal. *People v. Guerrero*, No. 3-95-0423 (1996) (unpublished order under Supreme Court Rule 23). On December 21, 2006, defendant filed a *pro se* successive postconviction petition which claimed, for the first time, that the trial court failed to properly admonish defendant at the time of his guilty plea that his sentence included a term of three years MSR and that, under *People v. Whitfield*, 217 Ill. 2d 177 (2005), he was therefore entitled to a three-year reduction in his prison sentence. Defendant averred in his petition that he learned that the trial court had erred and that MSR would be applied to his sentence after speaking to Ronald Whitfield, the subject of the *Whitfield* decision, while in prison.

¶ 7    Counsel was appointed and filed an amended postconviction petition and a motion for leave to file the successive petition on May 16, 2007. On October 22, 2007, the trial court held a hearing at which it heard testimony from defendant, including the following:

> "MR. STRZELECKI [defense counsel]: When did you first learn of the mandatory supervised release period?
>
> DEFENDANT: Last year with the Whitfield case.
>
> MR. STRZELECKI: And specifically, what led you to becoming aware of the mandatory supervised release period?

DEFENDANT: I was actually incarcerated with Mr. Whitfield, and he told me about his case that they were actually going through at that time, and I thought it had similar things in my case."

Defendant further stated that it was at this time, in 2005 or 2006, that he learned that he, personally, would have to serve an MSR period.

¶ 8 However, defendant also testified that, prior to 2005, he knew that he would have to serve parole once he finished his prison sentence. Defendant further testified that he "knew DOC was going to implement something on [his] sentence," and acknowledged that he would have to "serve a term of what [he] considered to be parole." He first gained an understanding of what parole meant, "when [he] got to the adult division," which he recalled was "[m]aybe '95 or '96," but he "wasn't really actually thinking about parole" because he "had a lot of time [in prison] anyway."

¶ 9 After hearing argument from counsel, the trial court made its findings, first stating that it could not find cause for allowing defendant to file a successive postconviction petition because, on cross-examination, defendant testified that he "knew" about MSR or parole. The court next stated as follows:

"Under the prejudice argument, what I'll say is that there's [*sic*] pleas that are Supreme Court Rule 402 conference pleas, there is [*sic*] pleas where the judge admonishes defendants as to the minimum and maximum, I'm not bound by these plea agreements, do you still wish to plead guilty. That's the kind of plea that Mr. Guerero [*sic*] and the process that he entered into, and this 50 year sentence is below that with the mandatory supervised release.

I'm going to deny your client leave to file a successive petition for post-conviction relief."

¶ 10 On appeal, the appellate court reversed the trial court's order and reduced defendant's sentence by three years pursuant to *Whitfield*. *People v. Guerrero*, No. 3-07-0856 (2008) (unpublished order under Supreme Court Rule 23). This court, in response to the State's petition for leave to appeal, directed the appellate court to vacate its judgment and reconsider its decision in light of *People v. Morris*, 236 Ill. 2d 345 (2010), which held that *Whitfield* established a new rule of law that would apply only prospectively to cases where a defendant's conviction was finalized after December 20, 2005, the date on which *Whitfield* was announced.

¶ 11 On remand, the appellate court again reversed. No. 3-07-0856 (unpublished order under Supreme Court Rule 23). The majority initially acknowledged that the *Whitfield* decision did not apply to this case, stating: "Based on the holding in *Morris*, we now understand this defendant's claim of a due process violation must be decided by this court based on the case law, as it existed, prior to the *Whitfield* decision." No. 3-07-0856 (unpublished order under Supreme Court Rule 23). The court thereafter held that defendant had established cause where he was not admonished of MSR by the trial court, he did not learn of the MSR requirements until he talked to Ronald Whitfield, *Whitfield* was decided after defendant's initial 1994 postconviction petition, and it was "this new rule of law which defendant relied upon in making his claim in his successive postconviction petition." *Id*. Where the court also

-4-

found defendant had established prejudice, it concluded that his plea was not knowingly and voluntarily made and he was entitled to relief. Thus, the court again modified the trial court's sentencing order to reduce defendant's sentence to 47 years' imprisonment followed by a 3-year term of MSR. *Id*. Justice Holdridge, in dissent, argued that defendant had not shown "the requisite good cause for failing to raise his claim of lack of proper admonishment regarding MSR in his initial postconviction petition." *Id*. (Holdridge, J., dissenting). The State now appeals.

¶ 12                                                    ANALYSIS

¶ 13     As stated, the issue presented is whether the trial court properly denied defendant's motion for leave to file a successive postconviction petition under section 122-1(f) of the Act. The State argues that our review of this issue should be *de novo*, citing *People v. LaPointe*, 365 Ill. App. 3d 914, 923 (2006) (*aff'd on other grounds*, 227 Ill. 2d 39 (2007)). However, in *LaPointe*, the panel noted that the trial court had not "found facts," but had decided only that the section 122-1(f) motion itself was legally insufficient. *Id.* Here, the trial court actually held a hearing on the motion for leave to file a successive petition, wherein defendant elicited testimony purporting to establish cause and prejudice within the meaning of section 122-1(f), and the State elicited testimony purporting to show that the statutory requirements had not been met. Thus, the trial court necessarily had to base its ruling on the specific circumstances of this case and not on a broadly applicable rule of law. See *People v. Taylor*, 237 Ill. 2d 356, 373 (2010) (citing *People v. Hall*, 195 Ill. 2d 1, 21 (2000)). Therefore, the decision here will not be disturbed on review unless it is manifestly erroneous. *Id.*; *People v. Rissley*, 206 Ill. 2d 403, 412 (2003); *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). "Manifest error" has been defined as error which is clearly plain, evident and indisputable. *Taylor*, 237 Ill. 2d at 373; *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 14     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2006)) provides a means whereby criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2006); *People v. Harris*, 206 Ill. 2d 293, 299 (2002). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998).

¶ 15     The Act generally limits a defendant to the filing of one postconviction petition (*People v. Holman*, 191 Ill. 2d 204, 210 (2000)) and expressly provides that any claim of substantial denial of constitutional rights not raised in the original or amended petition is waived. 725 ILCS 5/122-3 (West 2006). Notwithstanding this procedural bar, claims in successive petitions may be reviewed when the proceedings on the original petitions are deficient in some fundamental way. *People v. Britt-El*, 206 Ill. 2d 331, 339 (2002). Section 122-1(f) of the Act provides the legislature's limited grant of authority for successive petitions:

>     "Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection

(f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2006).

It is clear that both elements or prongs of the cause-and-prejudice test must be satisfied in order for the defendant to prevail. *Pitsonbarger*, 205 Ill. 2d at 464; *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008).

¶ 16    After examining the record in this case, we find that defendant cannot establish the cause prong of the cause-and-prejudice test. Before this court, defendant argues that even if he learned generally what parole meant at the time he was transferred to the adult division, the record fails to demonstrate that defendant knew that he, personally, would have to serve a term of MSR at the time of transfer. Rather, defendant contends that cause was established by the evidence that he met Whitfield in prison in 2005, and thereby learned about MSR and its application to his case. However, we agree with Justice Holdridge's dissent below that "this claim is unavailing for a number of reasons." No. 3-07-0856 (Holdridge, J., dissenting) (unpublished order under Supreme Court Rule 23).

¶ 17    As stated, cause is established by identifying an objective factor that impeded a defendant's ability to raise a specific claim during his or her initial postconviction proceedings. See 725 ILCS 5/122-1(f) (West 2006). Indeed, a ruling on an initial postconviction petition has *res judicata* effect with regard to all claims that were raised or could have been raised in the initial petition. *People v. Jones*, 191 Ill. 2d 194, 198 (2000) (citing *People v. Flores*, 153 Ill. 2d 264, 274 (1992)). Thus, the question arising here is whether defendant's claim that he was not admonished regarding MSR could have been raised in his original postconviction petition filed in 1994.

¶ 18    First, we believe it is clear from the record, as defendant acknowledges, that he understood the concept of parole, *i.e.*, that he would be serving a term of parole or MSR following his imprisonment, when he "got to" the adult division. However, while defendant thought this event occurred in "[m]aybe '95 or '96," his motion for extension of time to file his original postconviction petition states that he was, in September 1994, already an inmate at the Joliet Correctional Center, an adult facility. Thus, if defendant learned about parole upon transferring to Joliet, then he would have learned of it before he filed his original postconviction petition in late October 1994 and could have included his current claim in that petition. Additionally, the trial court, after hearing defendant testify about his knowledge of parole and MSR, determined that it could not find cause for allowing defendant to file a successive postconviction petition because, on cross-examination, defendant testified that he "knew" about MSR or parole prior to meeting Whitfield, thereby contradicting his allegation that he did not learn about MSR until 2005 or 2006.

¶ 19    As noted above, under the manifest weight standard of review, the appellate court was required to give great deference to the trial court's finding of facts, and therefore should not have disregarded that court's credibility determination. See *People v. Deleon*, 227 Ill. 2d 322,

332 (2008) (under the manifest weight standard, the reviewing court gives deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the witnesses, and a reviewing court will not substitute its judgment for that of the trial court regarding the credibility of the witnesses, the weight to be given to the evidence, or the inference to be drawn); *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). Therefore, the appellate court erred in accepting as true defendant's allegation that he could not have raised his claim earlier. See *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986) (the mere fact that a defendant or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default).

¶ 20    Second, defendant's claim that he was not admonished regarding MSR was not new or novel. Over 30 years ago, this court decided *People v. McCoy*, 74 Ill. 2d 398 (1979), a case involving failure to admonish a defendant about mandatory parole at the time of a guilty plea. While *McCoy*, whose facts are strikingly similar to those herein, was decided against the defendant, the lack of precedent for a position differs from "cause" for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review. See *People v. Leason*, 352 Ill. App. 3d 450, 454-55 (2004); see also *People v. Johnson*, 392 Ill. App. 3d 897 (2009) (the mere possibility that defendant's claim would have been unsuccessful does not equate to an objective factor external to the defense which precluded him from raising it in his initial postconviction petition). Moreover, there are several appellate court decisions which predate 1994, when defendant filed his original postconviction petition, and which decided the issue of failing to give an MSR admonishment favorably to the defendants. See *People v. Didley*, 213 Ill. App. 3d 910 (1991) (trial court's failure to admonish defendant as to MSR rendered his guilty plea involuntary and, thus, defendant was entitled to plead anew); *People v. O'Toole*, 174 Ill. App. 3d 800 (1988) (same); *People v. Kull*, 171 Ill. App. 3d 496 (1988) (same). Thus, it is clear that the claim of improper admonishment regarding MSR existed and could have been raised in defendant's original postconviction petition.

¶ 21    Finally, we find that the appellate court majority, despite words to the contrary, erred in using *Whitfield* as the basis for its finding that defendant had established the cause prong of the cause-and-prejudice test. Defendant's successive postconviction petition raised a *Whitfield* challenge, arguing that defendant had failed to receive the "benefit of the bargain" he made with the State when he pleaded guilty, and the appellate court granted a *Whitfield* remedy, by reducing defendant's sentence from 50 to 47 years, to be followed by a 3-year term of MSR. *People v. Guerrero*, No. 3-07-0856 (2008) (unpublished order under Supreme Court Rule 23). Following this court's remand for reconsideration in light of *People v. Morris*, 236 Ill. 2d 345 (2010), the appellate court initially acknowledged that *Whitfield* does not apply to defendant's case. However, the majority went on to state that defendant was not at fault for failing to raise the MSR admonishment issue in his original postconviction petition because it must accept as true defendant's claim "that he had cause for not raising this issue sooner because *Whitfield* was not decided until 2005," and "[i]t was this new rule of law which defendant relied upon in making his claim in his successive postconviction petition." No. 3-07-0856 (unpublished order under Supreme Court Rule 23). This finding is

-7-

clearly contradictory to the court's claimed understanding that *Whitfield* does not apply here.

¶ 22    Using this erroneous finding of cause, the majority concluded that because defendant was not admonished of his MSR period at the time of his guilty plea, and "only learned of his right to admonishments when he met Whitfield in prison and was told of the new rule of law that was established in Whitfield's case," defendant was "entitled to relief because his plea was not knowingly and voluntarily made." No. 3-07-0856 (unpublished order under Supreme Court Rule 23). Clearly, defendant cannot establish cause for failing to raise an involuntary plea claim in his initial postconviction petition by using the fact that a "benefit of the bargain" claim was not available at the time of that first petition. Accordingly, we hold that because defendant did not establish cause under section 122-1(f), his motion for leave to file a successive petition must be denied.

¶ 23    We believe it important to further note, for the clarification of all, that the appellate court also erred in holding that the proper remedy for defendant's involuntary plea was a three-year reduction in his sentence. In a case such as *Whitfield*, where a defendant is entitled to postconviction relief because he did not receive the benefit of the bargain he made with the State when he pled guilty, he has the option of either having the promise fulfilled or of being given the opportunity to withdraw his plea. *Whitfield*, 217 Ill. 2d at 202 (citing *Santobello v. New York*, 404 U.S. 257, 262-63 (1971)). Here, however, the appellate court found that relief was warranted where defendant's plea was not knowing and voluntary. The remedy under these circumstances, contrary to defendant's claim herein and the appellate court's finding, is not to grant defendant the "benefit of the bargain," but is limited to allowing defendant leave to file a motion to withdraw his plea. See *People v. Snyder*, 2011 IL 111382, ¶¶ 24-33; *Whitfield*, 217 Ill. 2d at 183-87; see also Ill. S. Ct. R. 604(d) (eff. July 1, 2006).

¶ 24                                    CONCLUSION

¶ 25    Based upon the foregoing, the trial court's finding that defendant did not establish the cause prong of the cause-and-prejudice test was not against the manifest weight of the evidence. We therefore reverse the judgment of the appellate court, and affirm the judgment of the circuit court denying defendant leave to file a successive postconviction petition.

¶ 26    Appellate court judgment reversed;

¶ 27    circuit court judgment affirmed.